THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH F. MALONEY, Respondent, v. JOHN R. EDWARDS, as Treasurer of Oneida County, Appellant.

*General statute providing for the redemption by a mortgagee from tax sales — when not affected by the provisions of a subsequent special and local statute.*

By chapter 91 of the Laws of 1880, as amended by chapter 8 of the Laws of 1881 (which acts relate to the collection of taxes in Oneida county by a sale of land by the treasurer of that county), it is provided that "the owner of, or *any person interested in*, any real estate sold for taxes as aforesaid, may redeem the same at any time within one year after the last day of such sale," and that the notice to be given thereunder by the treasurer shall state " that unless the said amount, and the interest thereon, is paid to the county treasurer within one year from the last day of such sale, the same will become absolute, and the owner, *or other person interested in said lands*, will be forever barred from all right or title thereto, and no other notice, either by the county treasurer or by the holder of the certificate of any sale, or by any other person, shall be necessary or required:" The said acts also provide that " All powers which are conferred upon the comptroller of this State, in relation to  *  *  *  the effect of any such sale of land for taxes upon the lien of any mortgage thereon, *  *  *  are hereby conferred, so far as relates to the county of Oneida, upon the treasurer thereof."

*Held,* That the provisions of the general statute (chap. 427 of the Laws of 1855, as amended by chapter 280 of the Laws of 1870), to the effect that no sale of real estate for non-payment of any tax or assessment shall destroy or affect the lien of any mortgage thereon, unless the purchaser at such sale shall, where such mortgagee shall file the notice required by the act, give to the mortgagee a written notice of the sale, were not repealed by chapter 91 of the Laws of 1880, as amended by chapter 8 of the Laws of 1881.

Appeal by the defendant John R. Edwards, as treasurer of Oneida county, from an order entered in the office of the clerk of the county of Oneida on the 8th day of July, 1889, by which it was ordered that the relator's motion herein be granted, and that a peremptory writ of *mandamus* issue out of and under the seal of this court directed to said John R. Edwards, as treasurer of Oneida county, commanding him to forthwith receive and collect from the relator, Joseph F. Maloney, the money heretofore, and on May twenty-third, tendered to said defendant, as such treasurer, by said relator, as assignee of a mortgage upon certain premises described, in full

payment of the amount named in a certain certificate of tax sale issued August 26, 1887, by said county treasurer to Davies & Johnson, purchasers, upon a sale of the said lands and premises for delinquent taxes thereon for the year 1886, assessed against Thomas Kenny.

*Davies & Johnson* and *G. C. Morehouse*, for the appellant.

*J. S. Baker*, for the respondent.

MARTIN, J.:

This is an appeal from an order directing that a peremptory writ of *mandamus* issue to the appellant, as treasurer of Oneida county, commanding him forthwith to receive the money tendered him by the relator, as assignee of a mortgage, which was a lien upon certain premises situated in the town of Florence in that county, which had been sold for the taxes levied thereon for the year 1886, and to deliver to the relator a receipt or certificate for such payment, certifying that the same was in full redemption of the premises and the lien of said taxes and from the sale thereunder.

The premises sold consisted of about twenty-two acres of land. The State and county taxes levied thereon for the year 1886 were returned unpaid. By virtue of the provisions of chapter 91, Laws of 1880, as amended by chapter 8, Laws of 1881, the treasurer of Oneida county sold the premises for such unpaid taxes in August, 1887. They were struck off to Davies & Johnson for twelve dollars and seventy-five cents, and a certificate was issued to them August 28, 1887. The treasurer executed and delivered to them a deed August 31, 1888. The mortgage held by the relator was given by the then owner of the premises February 17, 1886, and recorded on the twenty-fourth day of the same month. It was given to secure the payment of forty-two dollars and seventy-five cents and interest, and was assigned by the mortgagee to one Woodruff December 29, 1888, and by Woodruff to the relator March 29, 1889. Both of said assignments were duly recorded in the office of the clerk of the county of Oneida.

On February 8, 1889, Woodruff, as assignee of such mortgage, caused to be served upon the appellant a notice similiar to that required to be served on the comptroller by section 82 of chapter

427, Laws of 1855, and tendered the appellant the sum of twenty dollars, which was more than the sum for which said premises were sold, with twelve per cent interest and the treasurer's fee for the deed given by him added, and demanded a certificate of such payment and redemption. The appellant refused to receive the money so tendered or to give such certificate. On the 23d day of May, 1889, and after the transfer of said mortgage to the relator, he served upon the appellant a similar notice, made a similar tender and demand, and the appellant again refused to receive the money tendered or to give the certificate demanded.

The motion for *mandamus* was opposed by the appellant for the reason, as he states in his brief, " that defendant had no right to receive the moneys (tendered him by the assignees of such mortgage), or to cancel the said certificate." Therefore, the question presented is, whether the county treasurer had power and could have rightfully received the money tendered and delivered to the relator a receipt or certificate showing that said money was paid in redemption of the premises from such sale. A solution of this question is dependent upon the general statutes in relation to the sale of lands for unpaid taxes, unless those statutes have been repealed or modified by a subsequent one relating to the collection of taxes in the county of Oneida. To determine this question it becomes necessary to examine the general statutes so far as they relate to the rights of a mortgagee by virtue of his lien upon real estate which has been sold for unpaid taxes, his right as such to redeem, and the method of effecting such redemption, and also to examine the special act relating to the collection of taxes in the county of Oneida.

Chapter 427, Laws of 1855, as amended by subsequent acts, which constitutes the general law of the State in relation to the collection of taxes on lands of non-residents, and in relation to the sale of such lands for unpaid taxes, provides, among other things, as follows : " No sale of real estate hereafter made for the non-payment of any tax or assessment, shall destroy, or in any manner affect the lien of any mortgage thereon, duly recorded or registered at the time of such sale, except as hereinafter provided " (§ 76). " It shall be the duty of the purchaser at such sale to give to the mortgagee a written notice of such sale, requiring him to pay the amount of the purchase-money, with interest, at the rate allowed by law thereon, within six

months after the giving of such notice. Such notice may be given at any time after the expiration of two years from the last day of such sale " (§ 77, as amended by Laws of 1870, chap. 280). " If such payment shall be made, the sale shall be of no further effect, and the mortgagee shall have a lien on the premises for the amount paid, with the interest which may thereafter accrue thereon, at the rate of seven per cent per annum, in like manner as if the same had been included in his mortgage " (§ 78). " In case the mortgagee shall fail to make such payment within the time so limited, he shall not be entitled to the benefit of section seventy-six of this act " (§ 79). " The term 'mortgagee,' as used in this act, shall be construed to include assignees whose assignment shall be duly recorded, and personal representatives; and the term 'purchaser' shall be construed to include assignees, and real or personal representatives, as the case may be " (§ 80). " The notice required by section seventy-seven of this act may be given either personally or in the manner required by law, in respect to notices of non-acceptance or non-payment of notes or bills of exchange, and a notarial certificate thereof shall be presumptive evidence of the fact; such certificates may be recorded in the county in which the mortgage was recorded, in the same manner and with the same effect as is by law prescribed in respect to deeds or other evidences of title of real estate. A copy of such notice served, together with the affidavit of some person, who shall be certified as credible by the officer before whom such affidavit shall be taken, that such notice was duly served, specifying the mode of service, shall be filed in the office of the comptroller within one month after such service " (§ 81, as amended by Laws of 1870, chap. 280). " The notice required to be given under the last preceding five sections, in cases of sales by the comptroller, shall be directed only to such persons as shall within two years from the time of such sale file in the office of the comptroller a notice stating the name of the mortgagor and mortgagee, the date of the mortgage, and the amount claimed to be due thereon, and the county, town and tract in which the mortgaged premises are situated, with the number of the lot on which said mortgage is claimed to be a lien, with the name of the person or persons claiming notice, their residence, and the post-office to which such notice shall be addressed; in case such mortgagee or other person shall omit or neglect to file

such notice with the comptroller within the said two years, then said mortgagee or other person shall be barred from all claim to redemption by virtue of said mortgage, and the title of the purchaser shall become valid and effectual the same as if such mortgage had not existed " (§ 82, as revived by the repeal of chap. 285, Laws of 1862 ; by chap. 280, Laws of 1870).

The statute of 1855 was further amended by chapter 280, Laws 1870, by providing as follows: "A mortgagee whose mortgage is duly recorded, or the assignee of any mortgage whose assignment is duly recorded, and the personal representatives of such mortgagee or assignee, who shall have filed with the comptroller, as required by law, a notice and description of his mortgage, may, at any time after the sale of all or any part of the mortgaged premises for unpaid taxes, and before the expiration of six months from the giving of the notice required by section seventy-seven of chapter four hundred and twenty-seven of the Laws of 1855, entitled 'An act in relation to the collection of taxes on lands of non-residents, and to provide for the sale of such lands for unpaid taxes,' may redeem the said premises so sold, or any part thereof, from the said sale. If the said sale shall have been made by the comptroller, such redemption shall be made by paying to the State treasurer, upon the certificate of the comptroller, for the use of the purchaser, his heirs or assigns, the sum mentioned in his certificate, with interest at the rate allowed by law in the case of redemption by occupants, from the date of such certificate ; and if the sale shall have been made by a county treasurer, or other county officer, the redemption shall be made by paying to the county treasurer the amount for which said lands were sold, with interest at the same rate from the day of sale. The mortgagee or assignee of a mortgage, or other person redeeming land sold for unpaid taxes, as authorized by this section, shall have a lien on the premises so redeemed for the amount paid, with interest thereon from the time of such payment, at and after the rate of seven per centum per annum, in like manner as if the same had been included in the mortgage." While the statute last quoted was repealed by chapter 563, Laws of 1889, passed June 15, 1889, still the repealing act contained the following saving clause : " Sec. 2. Nothing in this act contained shall affect any suit or proceeding now pending in any

court of this State, or the rights of any party to any suit or proceeding commenced before the passage of this act." This proceeding was commenced before such repealing act was passed, and hence is not affected thereby.

This examination of the general statutes, which were in force when the act for the collection of taxes in Oneida county was passed, discloses that, under those statutes, as they then existed and still exist, a mortgagee's lien upon land sold for unpaid taxes was not only preserved, but also that a distinct and independent system for the redemption of such lands by the mortgagee was thereby established. Indeed, it seems to be admitted by all, that if the sale in question had been made by the comptroller, under the provisions of the statute of 1855, the relator's right of redemption would not have been barred when the notices and tenders made by the relator and his assignor were served and made. But the appellant claims that the sale in this case was made under a special statute relating to the collection of taxes in Oneida county, and hence that the foregoing provisions of the general law have no application, and the relator's right to redeem was barred by the limitation of one year contained in the Oneida act. That the sale in question was made in pursuance of such special act is admitted, but that the statute of 1855 is not applicable to the relator's right to redeem is denied.

The special act referred to (Laws 1880, chap. 91 as amended by chap. 8, Laws 1881) provides for the collection of taxes in Oneida county by a sale of lands by the treasurer of that county. It prescribes the notice to be given, where the sale shall be made, the manner of making such sale, the certificate to be given to the purchaser, the rights acquired by virtue of such sale and purchase, and then provides : " The owner of, *or any person interested in,* any real estate sold for taxes as aforesaid may redeem the same at any time within one year after the last day of such sale, by paying to the said county treasurer, for the use of the purchaser, his heirs and assigns, the sum mentioned in his certificate, and the interest thereon at the rate of twelve per cent per annum, to be computed from the date of such certificate " (§ 8, chap. 91 of 1880). " If such real estate sold for taxes, or any portion thereof, be not redeemed as herein provided, the said treasurer shall execute to the purchaser, his heirs or assigns, a conveyance of the real estate so sold, which shall vest

in the grantee an absolute estate in fee.    The said treasurer shall be entitled to demand and receive from the purchaser one dollar for preparing such conveyance."    (Sec. 9, id.)

"When any lot or piece of land sold for taxes by the treasurer shall, after the expiration of six months from the last day of the annual sale therefor, be in the actual occupation of any person as a residence, the purchaser, or the person claiming under him, shall serve a written or printed notice on such occupant, or by leaving such notice at the dwelling thereof with some person of suitable age, or by affixing such notice upon the outer door of such dwelling, or if such land shall not be occupied as aforesaid, such notice shall be published in one of the newspapers published in the city of Rome or the city of Utica, once each week for three weeks, stating, in substance, the sale of such lands, the person to whom made, and the amount for which the same was sold, and stating the time when the purchaser thereof will be entitled to receive a deed, and stating also that unless the said amount and the interest thereon is paid to the county treasurer within one year from the last day of such annual sale, the same will become absolute, and the owner or other persons interested in said lands will be forever barred from all right or title thereto, and no other notice, either by the county treasurer, or by the holder of the certificate of any sale, or by any other person, shall be necessary or required.    In case any of the lands so sold shall be redeemed therefrom subsequent to service of notice, the expenses of advertising and service of the notice herein provided, and any taxes upon lands so sold which may be assessed upon and paid by the purchasers, or assignees of such purchasers, between the time of the sale and redemption thereof, shall, with the interest thereon at the rate provided by this act, be added to the amount otherwise required to be paid for such redemption.    This section shall apply to the sales made by the treasurer of said county in the year eighteen hundred and eighty."    (Sec. 15, Laws 1880, as amended by chap. 8, Laws 1881.)

This act contains no express provision in relation to mortgage liens on land sold for taxes under it, nor is there any express provision in relation to the mode of procedure to be pursued to effect a redemption by a mortgagee, except so far as it is contained in section 12 of said act (chap. 91 of 1880), which is as follows: "All powers which are

conferred upon the comptroller of this State in relation to the cancellation of a tax which shall have been paid to a collector ; the repayment of any tax paid more than once ; the payment of a part of the tax on land by any person claiming a part of such land ; the redemption of lands sold for taxes by persons claiming an undivided share or specified part thereof ; the effect of such redemption, reducing the land to be conveyed ; *the effect of any such sale of land for taxes upon the lien of any mortgage thereon ; the right of a mortgagee to redeem ; the consequence of neglect to do so after notice, and the lien of the mortgagee for the amount paid on such redemption ;* the authority to withhold conveyances when it shall be discovered that any sale of land for taxes was ineffectual to convey a title, and to refund the purchase-money and interest to the purchaser are hereby conferred, so far as relates to the county of Oneida, upon the treasurer thereof."

Section 14 of said act is as follows : "All acts and parts of acts inconsistent or in conflict with this act, so far as the same do conflict and relating to the county of Oneida, are hereby repealed."

The first inquiry presented arises as to the effect of the repealing act contained in the special statute relating to the collection of taxes in Oneida county. Did it effect a repeal of the provisions of the general statutes in relation to mortgage liens and redemption by the holders of mortgages on the land sold for taxes, so far as it was applicable to that county ? We think not. It will be observed that the repeal provided for, was limited to such acts or parts of acts as were inconsistent or in conflict with the special act relating to Oneida county, and that such acts and parts of acts were repealed only so far as they were in actual conflict with it. We think that the repealing act quoted indicates an intention upon the part of the legislature not to repeal, but to preserve, as applicable to Oneida county, all acts or parts of acts relating to the sale of lands for the collection of taxes that were not actually inconsistent with the provisions of such special act or in real conflict with it. The general law contained definite and full provisions in relation to mortgage liens on lands sold for taxes, and as to the right and manner of redemption by a mortgagee or assignee of a mortgage thereon. The special act contained no provision on the subject, except as expressed in section 12. There was, therefore, no inconsistency or conflict

between the provisions of the general law on that subject and the special act, and the special act did not effect their repeal as to Oneida county.

Moreover, the provisions of section 12 of the special act seem to indicate quite clearly that the legislature did not intend to repeal these provisions of the general law, as that section seems to recognize the provisions contained in the general statutes in relation to the " effect of any such sale of lands for taxes upon the lien of any mortgage thereon ; the right of a mortgagee to redeem ; the consequences of neglect to do so after notice, and the lien of the mortgagee for the amount paid on such redemption," as unrepealed and a part of this act.

We are of the opinion that those provisions of the general statutes which relate to mortgage liens and redemption by mortgagees were not repealed, and hence we are led to the examination of the question whether they were modified by that act, and if so, to what extent and in what particulars. While it must be admitted that the special statute under consideration was inartificially drawn, and that it is somewhat ambiguous, still, when it is considered in the light of the statutes in existence when it was passed, and the obvious purpose of its passage, we are led to the conclusion not only that the provisions of the general law in relation to mortgage liens and redemption under them were not repealed, but that it was the intent and purpose of section 12 to make such general provisions a part of the special act, but modified by a substitution of the treasurer and his office in the place of the comptroller and his office, and by conferring upon the treasurer the powers and duties which, under the general law, devolved upon the comptroller, and substituting the county treasurer's office, instead of the comptroller's, as the place where notices in relation to such redemption should be filed.

If correct in our conclusion as to the effect of that statute, it follows not only that the period for redemption by the relator was not barred by the expiration of one year, but, also, that the appellant had the power and could have rightfully received the money tendered by the relator or his assignor, and have delivered to him a receipt or certificate showing that such money was paid in redemption from the sale of such premises.

That a notice was given to the treasurer, as provided for by section 82, chapter 427, Laws 1855, by the assignees of the mortgage in question within the time therein limited, and that the whole amount of the purchase-money, interest and expenses was tendered to him is not denied. It is said, however, that the tender was not for *the use of the purchasers*, as required by section 8 of the special act (chap. 91 of 1880), and, therefore, insufficient. It was not in that language. It was tendered " for and in full redemption of said premises from sale for delinquent taxes, in August, 1887, to Davies & Johnson," which we think was sufficient.

Nor do we think that it was invalid because a receipt or certificate therefor, in redemption of said premises from the sale for unpaid taxes, was demanded. There is nothing to show that the tender was on condition that a receipt or certificate should be given. The tender was rejected by the appellant upon the sole ground that he had no right or power to receive such money and give such certificate, and not upon the ground that such certificate was demanded. If the appellant had received the sum tendered, we think it would have effected a redemption of the premises, and it would then have been proper for him to have given a certificate as provided by section 71 of the Laws of 1855.

These considerations lead us to the conclusion that the order appealed from was proper, and should be affirmed.

Order affirmed, with ten dollars costs and disbursements.

HARDIN, P. J., and MERWIN, J., concurred.

Order affirmed, with ten dollars costs and disbursements.