In the Matter of THE FEDERAL LAND BANK OF SPRINGFIELD, Petitioner, for an Order of Mandamus against OREN S. PICKARD, as County Treasurer of Jefferson County, Respondent.

Supreme Court, Jefferson County, May 14, 1938.

B. A. Field, for the petitioner.

John H. O'Brien, County Attorney, for the respondent.

ZOLLER, J. Petitioner seeks a peremptory order of mandamus directing and requiring the respondent " to forthwith receive and collect from the petitioner * * * the money heretofore on May 18, 1937, and again on June 3, 1937, duly tendered to said respondent as county treasurer of Jefferson county by your petitioner, as owner of the mortgage described in said petition in full payment of the amount required to redeem the farm described in said petition from said tax sale in said petition mentioned * * * and that your petitioner be adjudged to be entitled to redeem and be permitted to redeem said farm from said tax sale and * * * and that the respondent be required to issue to the petitioner a certificate of redemption and that the farm be adjudged to be thereby redeemed from said tax sale and for such other and further relief as may be just." Respondent opposes the granting of any such order. It is his claim that petitioner is not entitled to any relief, and more particularly to a mandamus order, the relief which he seeks upon this application.

There is no dispute as to any material facts. It appears that the petitioner became the owner on or about November 18, 1929, of a $2,000 mortgage upon certain farm premises situate in the town of Wilna, Jefferson county, State of New York, owned at the time by Arthur Baker and Clara Baker, his wife, which mortgage was given to petitioner by said owners to secure the payment of their bond. It further appears that on or about April 21, 1931, the farm, which consists of about one hundred acres, was conveyed by said owners and mortgagors to Charles Collett and Lawrence Sochia, and that said deed was duly recorded in the Jefferson county clerk's office. Petitioner also alleges, none of which is disputed or denied, that in the year 1933 said farm was assessed in said town of Wilna against the estate of Charles Collett and a tax was levied thereon amounting to $34.32, and that in the year 1934 said farm was so assessed against Lawrence Sochia and a further tax levied thereon, including the returned unpaid tax for the year 1933, in the total sum of $71.24; that said tax of $71.24 was not paid and that thereafter, pursuant to the provisions of chapter 157 of the Laws of 1883, which is entitled "An Act to enforce collection of the taxes levied in the county of Jefferson," said farm was sold by the respondent, as county treasurer of Jefferson county, at public auction at a tax sale held on August 21, 1935, to Roy Genter and Isabelle Genter for $102.52, being the amount of the tax due, $91.54, and $10.98 interest thereon; that thereafter, pursuant to the provisions of said chapter 157 of the Laws of 1883, the purchasers of said farm at said tax sale caused to be published in a daily newspaper published in the city of Watertown in said county

of Jefferson once a week for three successive weeks, beginning on August 18, 1936, the following notice:

"Notice of Tax Sale Purchase.— Notice is hereby given that the following property has been purchased at public sale as provided by the Tax Laws of the State of New York of Oren S. Pickard, County Treasurer of Jefferson County, New York, on the 21st day of August, 1935, and that unless the amount for which such property was sold together with the interest thereon, taxes and costs of this notice is paid to the County Treasurer, Watertown, New York, on or before the 3rd day of October, 1936, the undersigned will be entitled to a deed thereof and the owner or other persons interested in said lands will be forever debarred from all rights or title thereto. Sochia, Lawrence, Parcel of land in Town of Wilna, containing about 100 acres, bounded on North by Mosher, East by Carthage-Antwerp State road, South by Adner. Tax and expense $91.54, Roy or Isabelle Genter, Purchaser. Whole interest."

Petitioner further shows that no person having redeemed said farm pursuant to said notice of tax sale purchase, this respondent, as such county treasurer, executed, acknowledged and delivered on October 6, 1936, a tax deed conveying said farm to said Roy Genter and Isabelle Genter, which deed was recorded in the office of the clerk of Jefferson county on October 6, 1936, at two-thirty-five P. M., in book 417 of Deeds, at page 334.

It is further alleged in paragraph XIII of said petition as follows: "That your petitioner was never notified by either of said purchasers at said tax sale, nor by any other person by service of notice, written or otherwise, or in any manner, of said tax sale, or requiring your petitioner to pay the amount required to redeem said farm from said tax sale or of the expiration of the time for such redemption or any other notice relative to said tax sale or redemption therefrom; and your petitioner was never informed of the non-payment of said taxes or of said tax sale until after said tax deed had been delivered and recorded as aforesaid."

Section 15 of said chapter 157 of the Laws of 1883 requires that the purchaser of a lot or piece of land sold for taxes by the county treasurer shall serve a written or printed notice upon the person actually occupying said property as a residence if after six months from the last day of the annual sale the property is so occupied, or, if not, then a notice shall be published in one of the newspapers published in the city of Watertown once each week for three weeks containing certain data as specified in said section 15.

Section 16 of said act provides that the notice required by section 15 with the proof of service thereof shall be exhibited to said county treasurer previous to his issuing a deed of the premises, and that such proof of service shall be recorded with the deed.

It is not claimed by petitioner that these various requirements were not complied with by the purchasers of said farm at said tax sale. As already appears, petitioner concedes that a notice of tax sale purchase was duly published. Nor is any claim made that the required proof of service of such notice was not exhibited to the county treasurer at the time he executed and delivered his tax deed on October 6, 1936, nor that proof of said service was not recorded with the deed. In any event, the petition is silent in this respect. In fact, petitioner admits that the various specified requirements and the prescribed formality of the special act to enforce collection of taxes levied in the county of Jefferson were carried out and complied with both by the county treasurer and the purchasers of the farm at said tax sale on August 21, 1935.

However, and this appears to be the gravamen of petitioner's application herein, it is claimed and alleged by petitioner that neither of said purchasers, nor any person claiming under them, has served or caused to be served upon petitioner, the record holder of said mortgage, personally or otherwise, a written notice of such tax sale requiring petitioner to redeem said farm from said tax sale, " as required by law, including sections 138 and 139 of the General Tax Law," and that no proof of service of any such notice has been recorded in the clerk's office of Jefferson county, or filed in the office of the county treasurer of Jefferson county at any time since said tax sale. It is also alleged that no such proof of service was ever presented to said county treasurer, and that said county treasurer has not given to said purchasers, or to any person claiming under them, " a certificate of non-redemption as provided by said section 138 and no such certificate of non-redemption pursuant to said section 138 and no such proof of service, as above described, has been recorded or filed in Jefferson County Clerk's Office where said mortgage was recorded."

Petitioner further alleges that it has duly tendered to the respondent for the redemption of said farm from said tax sale the sum of $183.90, lawful money of the United States, in full payment therefor, which payment, however, the respondent herein, as such county treasurer, refused to accept, whereupon petitioner has taken all proceedings necessary and proper whereby said tender has been kept good. Respondent raises no question in regard to the action so taken by petitioner. Therefore, petitioner claims that an order of mandamus is the only action or proceeding which adequately provides a remedy requiring respondent herein as county treasurer of Jefferson county to accept payment of said money for the redemption of said farm from said tax sale.

Said act to enforce collection of the taxes levied in the county of Jefferson (Laws of 1883, chap. 157) was passed on March 31, 1883, and took effect immediately. Section 6 thereof was amended by chapter 159 of the Laws of 1896 and again amended by chapter 213 of the Laws of 1899, neither of which amendments, however, is material to this discussion.

The original act at the time it became a law in 1883 contained eighteen sections. It did not contain, however, nor does it contain as amended, any provisions which are expressly stated therein such as are contained in section 138 of the Tax Law of the State of New York, as amended by chapter 471 of the Laws of 1936, in effect May 8, 1936, which in part is as follows: " The lien of a mortgage, duly recorded at the time of the sale of any lands for non-payment of any tax or assessment thereon, shall not be destroyed, or in any manner affected, except as provided in this and/or the succeeding section. The purchaser at any such sale, or those claiming under him, shall give to the record holder of the mortgage a written notice of such sale requiring him to pay the amount required to redeem the lands as provided in the succeeding section, within six months after the time of filing of evidence of the service of such notice with the Department of Taxation and Finance. Such notice must be given within one year from the expiration of the time to redeem. Such notice may/ oe given either personally or in the manner required by law in respect of notices of non-acceptance or non-payment of notes or bills of exchange. If redemption be not made pursuant to such notice, the mortgage shall be deemed to have been satisfied of record at the time of such sale." The section then prescribes the method or manner of giving the notice. I do not believe it makes any difference, in determining the rights which plaintiff claims under sections 138 and 139 of the Tax Law, whether we consider those sections as amended in 1936, or consider them as they existed prior thereto.

Prior to the enactment of said chapter 157 of the Laws of 1883, an act to enforce collection of the taxes levied in the county of Oneida had been enacted by the State Legislature, being chapter 91 of the Laws of 1880. This act in its original form contained fifteen sections. It is interesting to note that the first fourteen sections in each act were substantially the same. The fifteenth section of the Oneida county act provided for its taking effect. The language of this fifteenth section is used verbatim in the eighteenth section of the Jefferson county act. Section 15 of the Jefferson county act provides in substance that the purchaser at a tax sale shall serve either a written notice on an occupant who is in actual occupation of the land sold for taxes, or shall cause to be

published a notice in one of the newspapers published in the city of Watertown once each week for three successive weeks stating in substance the sale of such lands, the person who paid the amount for which the same was sold and the time when the purchaser thereof will be entitled to receive a deed. This is the notice which the purchasers of the farm in question caused to be published in the Watertown *Daily Times,* as hereinbefore stated. Evidently the omission of some such provision in the Oneida county act was discovered and thereupon section 15 of the Oneida county act was amended by chapter 8 of the Laws of 1881 so as to contain provisions substantially in the same language as were later contained in the Jefferson county act. It follows, therefore, that these two acts, one applying to Oneida county and the other to Jefferson county, were substantially the same both in form and phraseology. The similarity of these acts has been called to the attention of the court by counsel for the petitioner, particularly because of his contention that the decision in the case of *People ex rel. Maloney* v. *Edwards* (56 Hun, 377), decided by the General Term of the Supreme Court, Fourth Department, in 1890, is controlling here, although the issues in that case arose in Oneida county, under the provisions of said chapter 91 of the Laws of 1880, as amended by said chapter 8 of the Laws of 1881, but involved a determination of rights similar to those here presented.

The defendant Edwards was the county treasurer of Oneida county and had been commanded by a peremptory writ of mandamus granted by the court to forthwith receive and collect from the relator money which he had tendered to the defendant as such county treasurer, as assignee of a mortgagee upon certain premises which had been sold by the defendant as county treasurer at a tax sale, and further commanding him to deliver to the relator a receipt or certificate for such payment certifying that the same was in full redemption of the premises and the lien of said taxes and from the sale thereunder.

The premises had been sold pursuant to the provisions of chapter 91 of the Laws of 1880, as amended by chapter 8 of the Laws of 1881, and the treasurer had executed and delivered to the purchasers a deed thereof on August 31, 1888. The mortgage owned by the relator as assignee had been given on February 17, 1886, and had been duly recorded. A notice had been served upon the county treasurer similar to that required to be served on the Comptroller by section 82 of chapter 427 of the Laws of 1855, which, at that time, was the general Tax Law of the State. A tender of the amount due had been refused by the treasurer, upon the ground that he had no right to receive the moneys tendered

him or to cancel the certificate of tax sale which he had issued. Quoting from the opinion of the court (at p. 379) Judge MARTIN said: " Therefore, the question presented is, whether the county treasurer had power and could have rightfully received the money tendered and delivered to the relator a receipt or certificate showing that said money was paid in redemption of the premises from such sale. A solution of this question is dependent upon the general statutes in relation to the sale of lands for unpaid taxes, unless those statutes have been repealed or modified by a subsequent one relating to the collection of taxes in the county of Oneida. To determine this question it becomes necessary to examine the general statutes so far as they relate to the rights of a mortgagee by virtue of his lien upon real estate which has been sold for unpaid taxes, his right as such to redeem, and the method of effecting such redemption, and also to examine the special act relating to the collection of taxes in the county of Oneida."

Said chapter 427 of the Laws of 1855, as amended by subsequent acts, constituting in 1890 the general Tax Law of the State, contained several sections, 76 to 82, inclusive, which in a somewhat changed form and language are sections 138 and 139 of our present Tax Law.

As I have already stated, the Oneida county act at that time did not contain any such provisions as were then contained in the general Tax Law of the State. (Laws of 1855, chap. 427, §§ 76–82, inclusive, as amd.) In fact, the Oneida county act as it now exists (Laws of 1902, chap. 559, as amd.) contains no provisions which are expressly stated therein such as are contained in sections 138 and 139 of the present State Tax Law. So it seems to me that the court in *People ex rel. Maloney* v. *Edwards (supra)* passed upon and decided directly and precisely the same question as is presented here. There the court by unanimous opinion affirmed the order for a peremptory writ of mandamus and held that the provisions of the general Tax Law, as amended, to the effect that no sale of real estate for the non-payment of any tax shall destroy or affect the lien of any mortgage thereon unless the purchaser at such sale shall, where such mortgagee shall file the notice required by the act, give to the mortgagee a written notice of the sale, were not repealed by the Oneida county act.

The opinion of Judge MARTIN is so clearly and concisely stated and so definitely in point that I believe it is of importance to incorporate a portion thereof in this memorandum. Accordingly, I am quoting the following (pp. 384, 385):

" Section 14 of said act is as follows: 'All acts and parts of acts inconsistent or in conflict with this act, so far as the same do conflict and relating to the county of Oneida, are hereby repealed.'

" The first inquiry presented arises as to the effect of the repealing act contained in the special statute relating to the collection of taxes in Oneida county. Did it effect a repeal of the provisions of the general statutes in relation to mortgage liens and redemption by the holders of mortgages on the land sold for taxes, so far as it was applicable to that county? We think not. It will be observed that the repeal provided for was limited to such acts or parts of acts as were inconsistent or in conflict with the special act relating to Oneida county, and that such acts and parts of acts were repealed only so far as they were in actual conflict with it. We think that the repealing act quoted indicates an intention upon the part of the Legislature not to repeal, but to preserve, as applicable to Oneida county, all acts or parts of acts relating to the sale of lands for the collection of taxes that were not actually inconsistent with the provisions of such special act or in real conflict with it. The general law contained definite and full provisions in relation to mortgage liens on lands sold for taxes, and as to the right and manner of redemption by a mortgagee or assignee of a mortgage thereon. The special act contained no provision on the subject, except as expressed in section 12. There was, therefore, no inconsistency or conflict between the provisions of the general law on that subject and the special act, and the special act did not effect their repeal as to Oneida county.

" Moreover, the provisions of section 12 of the special act seem to indicate quite clearly that the Legislature did not intend to repeal these provisions of the general law, as that section seems to recognize the provisions contained in the general statutes in relation to the ' effect of any such sale of lands for taxes upon the lien of any mortgage thereon; the right of a mortgagee to redeem; the consequences of neglect to do so after notice, and the lien of the mortgagee for the amount paid on such redemption,' as unrepealed and a part of this act.

" We are of the opinion that those provisions of the general statutes which relate to mortgage liens and redemption by mortgagees were not repealed, and hence we are led to the examination of the question whether they were modified by that act, and if so, to what extent and in what particulars. While it must be admitted that the special statute under consideration was inartificially drawn, and that it is somewhat ambiguous, still, when it is considered in the light of the statutes in existence when it was passed, and the obvious purpose of its passage, we are led to the conclusion not only that the provisions of the general law in relation to mortgage liens and redemption under them were not repealed, but that it was the intent and purpose of section 12 to make such general provisions a

part of the special act, but modified by a substitution of the treasurer and his office in the place of the comptroller and his office and by conferring upon the treasurer the powers and duties which, under the general law, devolved upon the comptroller, and substituting the county treasurer's office, instead of the comptroller's, as the place where notices in relation to such redemption should be filed."

Another old Oneida county case is that of *Gabel* v. *Williams* (39 Misc. 489, decided in 1902). In that case there was before the court the question of whether or not a purchaser of lands at a tax sale was required to serve, in order to complete his title, a written notice to redeem upon any occupant or mortgagee of the lands, pursuant to sections 134 and 138 of the State Tax Law of 1896, the proceedings for the sale of the lands having been taken under the Oneida county tax law, chapter 559 of the Laws of 1902. That case holds in effect that where there has been no compliance with said sections 134 and 138 of the Tax Law in connection with a tax sale held in Oneida county, the purchaser cannot dispossess the occupant or mortgagee in possession. Quoting from Judge DUNMORE's exhaustive opinion, he said (pp. 499, 500):

" Justice and fairness require that personal notice to redeem should also be given to the mortgagees. Oftentimes the mortgagee lives hundreds of miles away from the property upon which he has taken a security. * * * A published notice to redeem would not in the ordinary course of events reach him.

" But this is not all the mischief which may result from the special act if it is to be given the construction contended for by the petitioners. Under that construction a man who has paid his taxes may lose his property without knowing any adverse claim is made upon it. Section 10 provides that the county treasurer's conveyance shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the lands sold, and that all notices required by law to be given previous to the expiration of the time allowed by law for the redemption thereof, were regular and in accordance with all the provisions of law relating thereto. After two years from the date of such conveyance such presumption shall be conclusive, the sale and conveyance thereof shall become absolute, and the occupant and all others interested in the land be forever barred from all liens upon, claims against, interest in, or right or title thereto. If, therefore, the public officers by mistake advertise for sale for taxes lands upon which the taxes have been paid and take the subsequent proceedings required by this act, and notice does not come to the owner or mortgagee of such proceedings until after the expiration of the two years upon which conveyance becomes absolute, they

lose their property and are apparently without redress. A construction of a statute that would practically confiscate property without the fault of the owner and without his knowledge should not be given unless the language is so clear and unambiguous as to bear no other construction. Where a person is seeking to seize upon the home of another, or, perhaps, the savings of a lifetime for part of one year's tax, I do not think it any hardship to require him to give personal notice to redeem to the occupant of the home or the owner of the savings. 1 am satisfied that the purchasers were bound to comply with sections 134 and 138 of the Tax Law, and that by reason of their failure to so comply they have not acquired such an interest in the premises in question as to entitle them to maintain this proceeding."

That was a summary proceeding brought by the petitioners as owners under a tax deed for the removal of defendants, one being a tenant occupying the premises and the other a mortgagee in possession. The summary proceeding was dismissed.

The language of section 12 of the Jefferson county act and the language of section 12 of the Oneida county act (Laws of 1880, chap. 91) are identical, with but two exceptions, the word " Jefferson " being used in one act and the word " Oneida " in the other, and there being a short paragraph at the end of the section in the Jefferson county act which does not appear in the Oneida county act, but which has no bearing upon the question here. That language as it appears in section 12 of each act is very significant and in part is as follows: "All powers which are conferred upon the Comptroller of this State in relation to * * * the effect of any such sale of land for taxes upon the lien of any mortgage thereon; the right of a mortgagee to redeem; the consequence of neglect to do so after notice and the lien of the mortgagee for the amount paid on such redemption * * * are hereby conferred, so far as relates to the county of [Jefferson or Oneida] upon the treasurer thereof." It seems to me that reference to the general Tax Law of the State regarding the rights of a mortgagee, as stated in sections 138 and 139 of the present State Tax Law, must necessarily be implied from such clear and definite language.

It is a well-established principle of law that whatever is necessarily implied in a statute is just as much a part thereof as if written therein. (*People ex rel. Huntington* v. *Crennan,* 141 N. Y. 239, 244; *Riggs* v. *Palmer,* 115 id. 506: *Gabel* v. *Williams, supra.*) Writing the opinion of the court in *Peterson* v. *Martino* (210 N. Y. 412), Judge Cardozo said (at pp. 416, 417, 418 and 419):

" We think that the true view is that the General Tax Law supplies the final and exclusive rule. In many cases decided by this court, * * * the supremacy of that statute over the local

acts that preceded it has been consistently upheld. It has been declared to be ' a codifying act, designed to reduce all statutes relating to taxation into a complete and harmonious system,' and ' to exhaust the subject to which it relates.' [Cases cited.] It has accordingly been held to override earlier statutes relating to taxation, even though the laws thus displaced were not enumerated ' in the schedule of one hundred and fifty-three acts and parts of acts expressly repealed.' [Cases cited.] * * *

" It is the law, declared on many occasions by this court, that a repeal by implication is not favored, and that it will be upheld only where the repugnancy is plain and unavoidable. [Cases cited.] It is also the law that a statute, applicable to a particular class of cases, is not repealed by a general statute, broad enough in terms to embrace the cases covered by the special law, unless the intent to work a repeal is manifest. [Cases cited.] Such an intent, however, must commonly be held to be manifest where the later statute is intended as a revision or codification of earlier enactments. * * * The very purpose of the Tax Law was to supplant the earlier statutes which had become so numerous and confusing that they could with difficulty be collated. To this end it declared a comprehensive system, superseding the scattered and fragmentary laws that preceded it. We think it important that this view of its operation be maintained. No doubt, it is necessary in any case to consider the scope and purpose of an earlier enactment involving the subject of taxation before we can determine whether the General Tax Law was intended to supersede it. A charter of a city containing a complete code of taxation applicable to that locality, may remain in force where special laws, dealing with fragmentary parts of the subject of taxation will give way. The determining consideration must be whether on comparison of the subject-matter of the two statutes, the one is fairly to be regarded as a revision of the other."

It is well established that in the construction of a statute adherence to the written word will not be suffered to defeat the general purpose and manifest policy intended to be promoted; that the intention, when discovered, will prevail over the letter; that a reasonable construction should be adopted in all cases where there is doubt or uncertainty in regard to the intention of the lawmakers; that a construction is to be avoided which is liable to produce a public mischief or to permit injustice and that language, however strong, must yield to what appears to be the intention and that is to be found in the words of the particular section alone by comparing it with the other parts of the general scheme of which it is a part; that a construction should be avoided which would injuri-

ously affect the rights of others and that sense should be attached to the provisions of an act which will harmonize its parts with the preservation and the enjoyment of all existing rights, and that a taxing statute is to be construed strictly as to the taxing power and liberally as to the owner. (*City Bank Farmers' Trust Co.* v. *New York Central R. R. Co.*, 253 N. Y. 49, 57; *Surace* v. *Danna*, 248 id. 18, 21; *City of Rochester* v. *Fourteenth Ward Assn.*, 183 id. 23, 30; *Spencer* v. *Myers*, 150 id. 269, 275; *Hayden* v. *Pierce*, 144 id. 512, 516; *Suburban Rapid Trans. Co.* v. *Mayor*, 128 id. 510, 523.)

For the several reasons stated, it is my conclusion that sections 138 and 139 of the general Tax Law are supplemental to the special tax act for Jefferson county (Laws of 1883, chap. 157, as amd.); that the provisions of the old general Tax Law were not repealed by said chapter 157 of the Laws of 1883, and that said sections 138 and 139 of the present general Tax Law are not inconsistent or in conflict with said chapter 157 of the Laws of 1883 as amended. It follows, therefore, that this petitioner was entitled to receive the written notice required by said section 138 and to exercise the right specified in said section 139.

Although petitioner, as the holder of the mortgage in question, is entitled to relief upon the facts before me, there still remains for determination whether petitioner is entitled to the particular relief which he seeks on this application. Counsel for petitioner urges that a peremptory order of mandamus is the proper and the only relief to which petitioner is entitled under all the circumstances, and in support of his position again calls attention to the case of *People ex rel. Maloney* v. *Edwards* (*supra*), where an order directing that a peremptory writ of mandamus issue to the relator was affirmed on appeal by the General Term of the Supreme Court in this Department. In that case the contention of the county treasurer was much the same as is the contention of the respondent herein. It seems to me that the decision in that case should be given much weight in arriving at a conclusion in this case, and that it may be properly regarded as controlling here.

As already stated, there is substantial agreement between the parties hereto as to all the facts herein. Petitioner on these facts claims that it has a legal right to redeem said farm from said tax sale and to pay to the county treasurer the amount due, and that said county treasurer, the respondent herein, failed to perform a duty specifically enjoined upon him by law. (Civ. Prac. Act, § 1296, subd. 1.) Petitioner further claims that there having been no such notice given as is required by said section 138 of the general Tax Law, there was available to petitioner the right specified in said section 139 of the general Tax Law and that such right was asserted

on its part within the time prescribed therein, the period of time being two years from the date of the sale on August 21, 1935, as prescribed in said section 139 prior to its amendment in May, 1936, and said period having been changed to thirty months after the sale as said section was amended by said chapter 471 of the Laws of 1936.

It is the claim of counsel for respondent that petitioner's remedy is a foreclosure action, wherein the purchasers of the farm would be parties defendant and whereby all issues could be determined. If I am correct in my conclusion that petitioner is entitled to the notice specified in said section 138 of the Tax Law and having received no such notice was in a position to have proceeded in the manner specified in said section 139, the present situation in which petitioner finds itself is due to no fault whatsoever on its part. Being without fault it would now be told to proceed with the foreclosure of its mortgage, even though in these particular times such action might be most undesirable. The fact that a plaintiff may have another remedy by an action for damages on his contract does not furnish a legal reason why a petition for a mandamus order should be denied. (*Matter of Universal By-Product Corp.* v. *Schwartz*, 216 App. Div. 311.) Petitioner maintains that it has no legal remedy except its right to a peremptory order of mandamus. The existence of an equitable remedy is no bar to the writ, although it may influence the court in the exercise of its discretion. (*People ex rel. Frost* v. *New York Central & H. R. R. R. Co.*, 168 N. Y. 187; 10 Carmody's N. Y. Practice, p. 553.) " The writ of mandamus is issued only when there is a clear legal right to be enforced and when there is no other adequate or legal remedy to obtain the relief sought. * * * If the right of the relator to the writ is not clear, or if there was some other adequate legal remedy more appropriate to the case, then the relator had no absolute right to the writ." (*People ex rel. Lehmaier* v. *Interurban St. R. Co.*, 177 N. Y. 296; *Matter of Haydorn* v. *Carroll*, 184 App. Div. 151, 155.) " A clear legal right means a right which is inferable as a matter of law from uncontroverted facts, regardless of the difficulty of the legal question to be decided, and the existence of difficult questions of law does not deprive the court of the authority to grant a peremptory mandamus order, when the facts clearly entitled the petitioner thereto." (10 Carmody's N. Y. Practice, p. 556.)

I am satisfied that petitioner is entitled to the relief which it seeks and that a peremptory order of mandamus should be granted. (*Matter of Oystermen's Dock Co.* v. *Downing*, 258 N. Y. 156; *People ex rel. Gas-Light Co.* v. *Syracuse*, 78 id. 56; 10 Carmody's N. Y. Practice, p. 556.)

Having reached the foregoing conclusions, obviously it is unnecessary to consider the further question of unconstitutionality of the Jefferson county act, if said sections 138 and 139 of the general Tax Law were not held to be supplemental to and a part of the special act. Counsel for petitioner raised this point in his memoranda and ably argued his position on that particular point.

Petitioner's motion is granted, with ten dollars motion costs.

An order may be submitted accordingly.